AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) **Case No. 1:22-MJ-00070** |
| 2982 Highforest Lane, Apt. 544, Cincinnati, OH 45223 | ) ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
**See Attachment A.**

located in the _____**Southern**_____ District of _____**Ohio**_____ , there is now concealed *(identify the person or describe the property to be seized):*
**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Narcotics Conspiracy |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute |

The application is based on these facts:
**See attached affidavit.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Brett Stratmann, ATF TFO**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____**FaceTime**_____ *(specify reliable electronic means).*

Date: **Jan 28, 2022**

_____
*Judge's signature*

City and state: **Cincinnati, Ohio**

**Hon. Stephanie K. Bowman, U.S. Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is 2982 HIGHFOREST LANE, APT. 544, CINCINNATI, OH 45223, further described as a multi-story, multi-family apartment building.  The common door to be entered is greenish steel door under an awning with the numbers 2982 clearly visible. The door to the apartment to be entered is gray in color with the numbers #544 affixed to a door knocker.  The Hamilton County (Ohio) auditor's website lists the parcel identification number for the apartment complex as 227-0A03-0020-00.

To include any safes or other containers found in the building, locked or unlocked, as well as any storage areas assigned to the residence, garages or outbuildings, front and rear yard area, and any commonly shared storage or access areas. To include any vehicles within the curtilage of the property.













## ATTACHMENT B

### *Property to be seized*

1.      All communications, in whatever form they may be—whether they are audio recordings, electronic communications, or otherwise—that contain evidence of Markita STONE's contacts and communications with co-conspirators from September 2, 2021, to present.

2.      All cellphones, mobile phones, and smartphones belonging to or used by STONE or co-conspirators (hereafter, any "Phone");

3.      To the extent contained on any Phone seized from the PREMISES, all records relating to violations of 21 U.S.C. § 846, a violation involving Markita STONE and/or co-conspirators and occurring on or about September 2, 2021, through the present, including records and information relating to:

    a.  Communications between STONE and co-conspirators related to the narcotics conspiracy.

    b.  Communications from STONE and co-conspirators to third parties related to obstructing, impeding, interfering, or influencing the investigation and judicial proceedings regarding incarcerated co-conspirators.

    c.  Evidence indicating how and when the Phone was accessed or used, to determine the chronological and geographic context of access and use as it relates to the crime under investigation and the Phone's user;

    d.  Evidence indicating the Phone user's state of mind as it relates to the crime under investigation; and

    e.  Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

4.      For any Phone whose seizure is otherwise authorized by this warrant:

a.  evidence of who used, owned, or controlled the Phone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the Phone, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the Phone was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the Phone user;

e.  evidence indicating the Phone user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the Phone of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Phone;

h.  evidence of the times the Phone was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the Phone;

j. documentation and manuals that may be necessary to access the Phone or to conduct a forensic examination of the Phone;

k. records of or information about Internet Protocol addresses used by the Phone;

l. records of or information about the Phone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

5. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF:
2982 HIGHFOREST LANE, APT. 544,
CINCINNATI, OHIO 45223

Case No.    **1:22-MJ-00070**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Brett Stratmann, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 2982 HIGHFOREST LANE, APT. 544 CINCINNATI, OHIO 45223 (the "**SUBJECT PREMISE**"), further described in Attachment A, for the things described in Attachment B.

2.      I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Organized Crime Investigative Squad of the Intelligence Unit of the Cincinnati Police Department (CPD) since 2014.  I have been a police officer with the CPD for more than 25 years.  I have conducted and participated in numerous drug trafficking investigations, illegal use of firearm investigations that were related to murders and felonious assaults, and money laundering investigations during my career, which have resulted in the drug and gun seizures, seizures of large amounts of drug proceeds in the form of U.S. currency, arrests of suspects, their prosecution, and conviction.  I have participated in numerous interviews of individuals involved in the distribution, transportation, and sales of controlled substances, which included discussions regarding how those organizations operate.  Because of this experience, I am familiar with the day-to-day operations of distributors and transporters of controlled substances.  I

am aware that drug traffickers often communicate with their customers, couriers, and/or associates with cellular telephones, or use of multiple telephones or other devices, to avoid detection by law enforcement. I am aware that individuals involved in the illicit distribution of controlled substances nearly always tend to conceal their identities as well as the locations where they live and where drug transactions take place. These individuals are also known to have vehicles, properties, businesses, utilities, and other purchases in the names of other people to conceal their financial transactions and any other association with their drug trafficking activity. Based on my training and experience, I know that drug dealers will often acquire assets and register these assets (including but not limited to cell phones, mobile devices, and/or vehicles) in fictitious names or the names of associates to disguise their ownership. I have also participated in numerous interviews of individuals involved in the illegal possession of firearms.

3.      I have participated in the investigation of the offenses referred to above and have reviewed ATF reports and reports prepared by other law enforcement agencies. I have also been involved with the analysis of pen registers, the monitoring of Title III wire intercepts, and the installation and monitoring of tracking devices for vehicles in relation to narcotics investigations. Further, I have been the affiant and obtained numerous Federal warrants for the cell phone data location of fugitives and subjects under investigation by the ATF and the Cincinnati Police Department. I have testified as an expert regarding the drug distribution of drug traffickers in federal District Court in the Southern District of Ohio and the Hamilton County Court of Common Pleas Court, State of Ohio.

4.      In my experiences I have had the opportunity to monitor, listen, and review transcripts pertaining to communications which involved the trafficking of illegal narcotics by

persons who attempted to thwart law enforcement by speaking in some sort of coded language. I have also participated in numerous post arrest and proffer interviews of individuals with knowledge of illegal drug trafficking that had been involved in using coded language and were familiar with day-to-day operations utilized by those involved in the illegal trafficking of narcotics. Through these interviews and other investigative experiences, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon utilized by illegal drug traffickers in the course of conducting their criminal activities.

5.      In addition, I have utilized confidential informants, pen registers, toll records, physical surveillances, and electronic surveillances in the process of my investigations to further my knowledge regarding the operations of those involved in illegal narcotics distribution. I have further been the affiant on Federal search warrants, have testified in Grand Jury proceedings, and have written reports during the course of conducting investigations.

6.      Through my training, experiences, and communications with other experienced agents and officers who conduct drug investigations, I have become familiar with methods used by drug traffickers to import, transport, store, collect, and safeguard illegal narcotics. Additionally, my training and experiences have given me knowledge regarding the methods used by drug traffickers to communicate with each other, to launder drug proceeds, and to thwart efforts by law enforcement to detect their illegal activities. I also have gained intelligence through my experiences, and through conversations with others who have conducted drug-related investigations, regarding methods by which drug traffickers' package, prepare, and distribute narcotics.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PURPOSE OF THE AFFIDAVIT

8.      This affidavit is submitted in support of an application for search warrant for persons to be arrested and for digital devices and documentary evidence located at the **SUBJECT PREMISE** and surrounding curtilage, related to evidence of a conspiracy to possess with intent to distribute and distribute fentanyl and/or other controlled substances in violation of 21 U.S.C. § 846 and for possession with intent to distribute the same in violation of 21 U.S.C. § 841(a)(1).

9.      For all the reasons articulated below, I have probable cause to believe that evidence related to these crimes will be located within the **SUBJECT PREMISE**, which is more fully described in Attachment B.

## PROBABLE CAUSE

**A. Cincinnati Police Department and ATF are investigating Michael MILLER, Markita STONE, and other co-conspirators for drug trafficking in Cincinnati, Ohio.**

10.      On October 8, 2021, District Five Violent Crime Squad, with the assistance of the Cincinnati SWAT team, executed a search warrant at 880 Lafayette Avenue #17, Cincinnati, Ohio, which included the search of multiple vehicles associated with that address.  The search warrant was a result of the investigation of the drug trafficking activities of Michael MILLER, Zion MILLER, Armaunnie COSTON, Andre HOUSTON, and additional co-conspirators. Michael MILLER was taken into police custody during the search warrant.  During the search of

4

the location, along with the vehicles associated to Michael MILLER, officers recovered four semi-automatic handguns (Ruger LCP .380 serial number 371323858; SCCY CPX-2 9mm serial number C100358; SCCY CPX-2 9mm serial number 661780; and a Master-Piece Arms MPA Defender 9mm serial number FX01562) from Michael MILLER's bedroom.  Officers also recovered multiple distribution quantities of various illegal drugs, multiple blenders, and items used to prepare and package drugs.  Markita STONE was also present in the apartment searched by police. Markita STONE had been identified as the girlfriend of Michael MILLER during the investigation.

11.     Following Michael MILLER's arrest, District Five VCS officers began to monitor recorded jail calls made by Michael MILLER from the Hamilton County Justice Center.  On recorded jail calls, officers heard Michael MILLER direct his brother Zion MILLER to keep the phone number used by Michael MILLER's drug customers up and running.  Michael MILLER further directed Zion MILLER to work the drug phone in the morning hours and have "Monnie" work the phone in evening to effectively continue Michael MILLER's drug trafficking operations from jail.  Officers also identified Markita STONE on recorded jail calls and learned that STONE was communicating with Michael MILLER and assisting him with the on-going conspiracy to distribute drugs.

**B. STONE used cellular devices in furtherance of the drug trafficking conspiracy.**

12.     Monitoring of recorded jail calls and officers' investigation showed that STONE regularly used cellular devices to further the activities of the drug conspiracy.  For example, on October 14, 2021, Michael MILLER, on a recorded jail call, instructed STONE to call Zion MILLER and COSTON to advise the two that the "snitch" is "Moe."  STONE then made a three-

way call with Zion MILLER where Michael MILLER and Zion MILLER communicated about "Moe."  Furthermore, in the recorded call, STONE told Michael MILLER that she had Michael MILLER's phone – "the one that starts with a 6" – which I believe, based on my investigation in this case, was the 513-652-8303 phone that drug customers contacted to buy drugs.  Michael MILLER instructed STONE to get the phone fixed and give the phone to Zion. STONE explained that when drug customers called the phone, she relayed the information to Zion MILLER.

13.     On October 16, 2021, recorded jail calls revealed that Michael MILLER was upset the Zion MILLER broke the screen to the "dope phone." STONE was communicating with Michael MILLER while at the phone store and Michael MILLER instructed STONE to change his phone pin number.  STONE called COSTON on three-way so that Michael MILLER and COSTON could discuss Zion MILLER.  Zion MILLER also gets on the phone and the co-conspirators discussed the drug trafficking operation. Michael MILLER also instructed STONE to tell drug customers that call the drug phone where to meet Zion MILLER and COSTON. While on the recorded jail call, STONE muted her phone call with Michael MILLER to answer the drug phone when a customer called.

**C. STONE transferred phone numbers to new cellular devices when law enforcement seized the drug phone.**

14.     On Monday, October 25, 2021, at approximately 4:00 p.m., Cincinnati Police Crime Gun Intelligence Center Unit (CGIC) conducted surveillance in an unmarked police vehicle at the BP Gas Station located at 2110 Montana Avenue, Cincinnati, Ohio. Officers saw a red Jeep Compass bearing Georgia license plate CLS2370 parked at a gas pump. There were four male black occupants inside the Jeep. Officers saw the front seat passenger conducting multiple

hand-to-hand drug transactions with other individuals that were in the lot. After several minutes, officers saw the Jeep leave the parking lot. When uniformed officers attempted to stop the Jeep in a marked police cruiser, the driver failed to stop and a short vehicle pursuit ensued. During the pursuit, all occupants of the vehicle jumped out and fled on foot.

15.     One officer saw COSTON walking behind 2336 Buddleia Court a few minutes after fleeing from the vehicle. Officers wearing plain clothes wearing a tactical vest with "POLICE" clearly marked told COSTON to stop, but he refused and fled on foot. After a short foot pursuit, COSTON was apprehended and 5 Percocet pills and $2,286 in U.S. currency were recovered from his pants pocket. COSTON also had two iPhones on his person.

16.     Andre HOUSTON, another occupant, was apprehended from the vehicle. The other two occupants were not found by police. Police recovered four iPhones from the vehicle and two additional phones. Search warrants were executed on the six phones. One of the phones recovered was the 513-652-8303 phone that drug customers contacted to buy drugs.

17.     On October 25, 2021, in recorded jail calls, STONE told Michael MILLER about the pursuit and explained that Zion MILLER crashed the car. STONE also advised Michael MILLER that she was at Tina's Carryout getting new cellular phones for Zion MILLER because he lost his phones in the pursuit with police. After October 25, 2021, STONE continued to communicate with Michael MILLER in recorded jail calls. Review of recorded jail calls showed that STONE continued to set up the re-activation of phone numbers to new devices after law enforcement seized the co-conspirators' phones. Also, Michael MILLER directed Markita STONE to transfer money and narcotics by meeting with co-conspirators. Furthermore, STONE

continued to make three-way phone calls with co-conspirators while talking to Michael MILLER.

18.     Beginning in November 2021, Cincinnati Police made controlled drug buys from co-conspirators by calling the 513-652-8303 drug phone.

19.     On December 8, 2021, officers from the District Three Violent Crimes Squad executed a search warrant at 2383 Williamsburg Drive with the assistance of the Cincinnati Police SWAT Team. During the execution of the search warrant, Zion MILLER fled out of the back door of the target location when told to stop by police and was taken into custody several addresses away. Zion MILLER had $9,783 in U.S. currency in his pants pocket. Among the currency recovered was $20 that was used during a prior controlled buy with Zion MILLER during the week of December 1, 2021.  CPD SWAT secured Marquise FOUNTAIN, Chrishayla Carter (leaser of apartment), and Artaz Stanford in the residence. Inside of the apartment, officers recovered approximately 82 grams of fentanyl, 73 grams of methamphetamine, and 10 grams of crack cocaine. Officers also found evidence of drug trafficking such as blenders, digital scales, baggies, "cut" used to mix with the drugs, and several cell phones. Officers recovered a 9mm Glock model 17 bearing serial number BKUE976 with seventeen rounds; and a stolen .45 caliber Glock model 21 bearing serial number SDG871 with fourteen rounds.  Both semiautomatic handguns were found in the kitchen near the recovered drugs and drug trafficking paraphernalia.  Officers recovered 3.758 grams of fentanyl from FOUNTAIN's person.

20.     While executing the search warrant, Markita STONE arrived at 2383 Williamsburg Drive in a vehicle.  Officers attempted to speak to STONE.  STONE was on the phone and advised the driver to leave the area without speaking to police.  Upon review of

Michael MILLER's calls from the Hamilton County Justice Center officers discovered that STONE was on the phone with Michael MILLER.  Therefore, I believe that STONE was using cellular devices to communicate with Michael MILLER during jail calls.

21.     Officers also learned from jail calls that COSTON had arrived at 2383 Williamsburg Drive as the SWAT team was on scene and COSTON left the area.  Following the search warrant, Michael MILLER called COSTON at from jail and told him to get the new phones from STONE.  STONE confirmed with Michael MILLER that she has purchased the new phones ("lick phone" 513-652-8303 and Zion MILLER's phone 513-773-6692) from Tina's Carryout store located in Over the Rhine.  In a recorded call, STONE also contacted Arik SMITH on an additional line while on the phone with Michael MILLER.  During this call, MILLER asked Arik SMITH if he can handle the phones and SMITH said that he can.  Markita STONE delivered the new phones with the "lick phone" numbers re-ported to the new devices. STONE and Michael MILLER discussed talking on a different phone to avoid detection of law enforcement who may be monitoring jail calls.

22.     On January 14, 2022 and January 21, 2022, officers from Cincinnati Police District Three VCS met with a confidential and reliable informant (CI) # 3693 with the purpose of making a calls to at the 513-652-8303 phone to purchase fentanyl from SMITH and co-conspirators.  VCS officers successfully completed two controlled purchases at the 3298 Montana Avenue address by contacting the 513-652-8303 "lick phone." The calls were made to the phone that was provided to Arik SMITH by Markita STONE after the execution of the search warrant at 2383 Williamsburg Drive and the seizure of the original 513-652-8303 drug phone by police.

23.     Through investigation, law enforcement determined that STONE was living at 2982 Highforest Lane, Apt. 544, Cincinnati, Ohio 45223.  On January 27, 2022, officers knocked on the door at 2982 Highforest Lane, Apt. 544 and STONE answered the door.  Additionally, officers saw SMITH's vehicle in front of the residence.  Therefore, I believe that STONE is currently residing at 2982 Highforest Lane, Apt. 544, Cincinnati, Ohio 45223.

24.     Based on my training and experience, and the fact that STONE discussed her purchase of new phones on behalf of the drug trafficking organization on at least two occasions, I believe Markita STONE is in possession of paperwork, receipts, and boxes for the hand-held cell phones she purchased in furtherance of the drug conspiracy to re-port the 513-652-8303 to new devices.   Based on my training and experience, I also believe STONE used cellular phones to communicate with Michael MILLER and other co-conspirators.  This belief is based on officers' review of recorded jail calls and observations of STONE using a cellular device to communicate with Michael MILLER.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

25.     As described above and in Attachment B, this application seeks, among other things, permission to search for cellphones, mobile phones, and smart phones (all forms of computers and/or storage media) that might be found on the **SUBJECT PREMISE**, as well as relevant records and information that might be stored on those devices.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

26. *Probable cause.* I submit that if a cellphone, mobile phone, or smart phone is found on the **SUBJECT PREMISE**, there is probable cause to believe that relevant records will be stored on that device for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users

11

typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to, among other things, locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers (including cellphones, mobile phones, and smartphones) were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **SUBJECT PREMISE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide

crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely

reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

28.  *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it

requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.  Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

29.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the

16

warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a warrant to search the **SUBJECT PREMISE** described in Attachment A and seize the items described in Attachment B, all in violation of 21 U.S.C. § 846.

Respectfully submitted,

BRETT STRATMANN
Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by the Applicant in accordance with Fed. R. Crim. P. 4.1
this _28_ day of January, 2022. **via electronic means, specifically Facetime video.**

HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

**<u>ATTACHMENT A</u>**

*Property to be searched*

The property to be searched is 2982 HIGHFOREST LANE, APT. 544, CINCINNATI, OH 45223, further described as a multi-story, multi-family apartment building.  The common door to be entered is greenish steel door under an awning with the numbers 2982 clearly visible. The door to the apartment to be entered is gray in color with the numbers #544 affixed to a door knocker.  The Hamilton County (Ohio) auditor's website lists the parcel identification number for the apartment complex as 227-0A03-0020-00.

To include any safes or other containers found in the building, locked or unlocked, as well as any storage areas assigned to the residence, garages or outbuildings, front and rear yard area, and any commonly shared storage or access areas. To include any vehicles within the curtilage of the property.













**ATTACHMENT B**

*Property to be seized*

1.      All communications, in whatever form they may be—whether they are audio recordings, electronic communications, or otherwise—that contain evidence of Markita STONE's contacts and communications with co-conspirators from September 2, 2021, to present.

2.      All cellphones, mobile phones, and smartphones belonging to or used by STONE or co-conspirators (hereafter, any "Phone");

3.      To the extent contained on any Phone seized from the PREMISES, all records relating to violations of 21 U.S.C. § 846, a violation involving Markita STONE and/or co-conspirators and occurring on or about September 2, 2021, through the present, including records and information relating to:

    a.  Communications between STONE and co-conspirators related to the narcotics conspiracy.

    b.  Communications from STONE and co-conspirators to third parties related to obstructing, impeding, interfering, or influencing the investigation and judicial proceedings regarding incarcerated co-conspirators.

    c.  Evidence indicating how and when the Phone was accessed or used, to determine the chronological and geographic context of access and use as it relates to the crime under investigation and the Phone's user;

    d.  Evidence indicating the Phone user's state of mind as it relates to the crime under investigation; and

    e.  Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

4.      For any Phone whose seizure is otherwise authorized by this warrant:

    a.   evidence of who used, owned, or controlled the Phone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.   evidence of software that would allow others to control the Phone, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.   evidence of the lack of such malicious software;

    d.   evidence indicating how and when the Phone was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the Phone user;

    e.   evidence indicating the Phone user's state of mind as it relates to the crime under investigation;

    f.   evidence of the attachment to the Phone of other storage devices or similar containers for electronic evidence;

    g.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Phone;

    h.   evidence of the times the Phone was used;

    i.   passwords, encryption keys, and other access devices that may be necessary to access the Phone;

j.  documentation and manuals that may be necessary to access the Phone or to conduct a forensic examination of the Phone;

k.  records of or information about Internet Protocol addresses used by the Phone;

l.  records of or information about the Phone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

5.  As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).